IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN T. BRAGG,<br><br>        Petitioner,<br><br>vs.<br><br>WARDEN JERRY SPATNY,<br><br>        Respondent. | CASE NO. 1:24-cv-1388<br><br>DISTRICT JUDGE<br>PAMELA A. BARKER<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT AND<br>RECOMMENDATION** |

John T. Bragg filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. Bragg is currently in custody at the Grafton Correctional Institution serving a corrected sentence of imprisonment for life plus three years with parole eligibility after 33 years imposed by the Cuyahoga County Court of Common Pleas in *State v. Bragg*, Case No. CR-89-237718-A. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss Bragg's petition.

**Summary of underlying facts**

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). "This presumption also applies to the factual findings that [a] state appellate court makes on its review of the state trial record." *Johnson v. Bell*,

525 F.3d 466, 474 (6th Cir. 2008). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Id.*

The Ohio Court of Appeals for the Eighth Appellate District summarized the facts and procedural background of Bragg's underlying case as follows:

> A. THE APPELLANT'S ARREST
>
> On March 11, 1989, the body of Joseph Dziewicki was discovered lying in the middle of Sidaway Avenue near the Dan-Dee Potato Chip Company. Upon transportation to St. Vincent Charity Hospital, Joseph Dziewicki expired as a result of gun-shot wounds to the head and the upper right shoulder. The Cuyahoga County Coroner determined that the cause of death was the gun-shot wound to the head and that the death of Joseph Dziewicki was a homicide. On March 14, 1989, the appellant was arrested as a result of the investigation of the death of Joseph Dziewicki.
>
> B. THE APPELLANT'S INDICTMENT
>
> On March 23, 1989, the appellant was indicted by the grand jury of Cuyahoga County for one count of aggravated murder (prior calculation and design) with a felony murder specification and a firearm specification in violation of R.C. 2903.01(A), one count of aggravated murder (during the commission of a felony) with a felony murder specification and a firearm specification in violation of R.C. 2903.01(B), one count of kidnapping with a firearm specification in violation of R.C. 2905.01 and one count of aggravated robbery with a firearm specification in violation of R.C. 2911.01.
>
> C. THE APPELLANT'S ARRAIGNMENT
>
> On March 27, 1989, the appellant was arraigned whereupon a plea of not guilty was entered to all four counts of the indictment.

2

D. THE APPELLANT'S FIRST JURY TRIAL WHICH ENDED IN A MISTRIAL

On May 24, 1989, a jury trial was commenced with regard to the four counts of the indictment. On June 10, 1989, the trial court declared a mistrial on the basis that the jury was unable to reach a verdict. A second new trial was rescheduled with regard to the four original counts of the indictment.

E. THE APPELLANT'S SECOND JURY TRIAL

On September 25, 1989, a second trial was commenced before a jury. At the conclusion of the trial, the jury found the appellant guilty of aggravated murder (prior calculation and design) with a felony murder specification and a firearm specification, guilty of kidnapping with a firearm specification and guilty of aggravated robbery with a firearm specification.

F. THE TRIAL COURT'S SENTENCE

On October 18, 1989, the jury concluded the penalty phase of the appellant's trial and returned a recommendation of thirty years to life on each count of aggravated murder. Pursuant to the mandate of R.C. 2929.03(D)(2), the trial court imposed the sentence recommended by the jury and sentenced the appellant to incarceration within the Correctional Reception Center, Orient, Ohio, for a term of life imprisonment with parole eligibility after thirty years as to each count of aggravated murder. The trial court, however, merged the two sentences of life imprisonment. In addition, the trial court sentenced the appellant to incarceration for a term of ten years to twenty-five years with regard to each offense of kidnapping and aggravated robbery and three years of actual incarceration as to the gun specifications. All terms of incarceration were ordered to be served consecutive to each other.

*State v. Bragg*, No. 58859, 1991 WL 127135, at *1 (Ohio Ct. App. June 27, 1991).

In December 1989, the trial court issued a nunc pro tunc order in which it: (1) sentenced Bragg to life imprisonment on counts one and two, with parole eligibility after 30 years, consecutive to and after a three-year sentence on the firearm specifications; (2) merged counts one and two and the firearm specifications on all counts; and (3) sentenced Bragg to 10 to 25 years' imprisonment on counts three and four, to run concurrent to each other but consecutive to merged counts one and two. Doc. 6-1, at 499. As is noted below, the trial court later corrected this judgment. *See* Doc. 6-1, at 411.

**Procedural background**

In his return, Respondent notes that due their age, many state court records are not retrievable. Doc. 6, at 4 n.1, 5 & n.2, 8 n.4. Indeed the record the Respondent filed does not contain Bragg's initial notice of appeal, appellate briefing for that appeal, of the court of appeals' resulting decision. Nonetheless, given the nature of the issue raised in Bragg's petition, the Court is able to adjudicate his petition.[1]

---

[1] Ohio's Eighth District Court of Appeals affirmed Bragg's conviction in 1991. *See State v. Bragg*, No. 58859, 1991 WL 127135 (Ohio Ct. App. June 27, 1991). In his return, the Warden asserts that Bragg's notice of appeal is record exhibit 3 and that his appellate brief is exhibit 4. Doc. 6, at 6, 8. But these documents relate to a separate appeal that Bragg filed in 1996. *See* Doc. 6-1, at 8–29

4

*1. Direct appeal*

According to Ohio's Eighth District Court of Appeals, Bragg filed a timely notice of appeal. *See State v. Bragg*, No. 58859, 1991 WL 127135, at *2 (Ohio Ct. App. June 27, 1991). Bragg raised fourteen assignments of error. *Id.* at *2–14. In June 1991, the court of appeals affirmed. *Id.* at *15. The Ohio Supreme Court sua sponte dismissed Bragg's later appeal in December 1991. Doc. 6-1, at 505.

*2. Bragg's various other actions filed in his state criminal case*

Since his conviction in 1989, Bragg has filed a host of other actions. They are summarized below. Their substance is detailed only where relevant to the issue raised in Bragg's current habeas petition.

*2.1 Bragg's Rule 26(B) application*

In April 2001, Bragg filed an under Ohio Appellate Rule 26(B) an application to reopen his direct appeal.[2] *State v. Bragg*, No. 58859, 2001 WL 1671424, at *1 (Ohio Ct. App. Nov. 26, 2001). The Ohio court of appeals rejected

---

[2] Ohio Rule of Appellate Procedure 26(B)(1) provides:

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

5

Bragg's application as untimely and meritless. *Id.* at *1–2. In March 2002, the Ohio Supreme Court dismissed Bragg's later appeal. Doc. 6-1, at 506.

### 2.2 Bragg's other state-court filings

In 1989, the trial court denied Bragg's motion for a new trial and to modify his sentence. Doc. 6-1, at 34, 499–500.

In September 1995, Bragg filed a habeas petition in state court. *See State ex rel. Bragg v. Seidner*, 748 N.E.2d 532, 533 (Ohio 2001); Doc. 6-1, at 412. In March 1996, the court of appeals granted summary judgment and denied Bragg's petition. *Bragg*, 748 N.E.2d at 533. Bragg filed a motion for relief from judgment, which the court of appeals denied in December 2000. *Id.*; Doc. 6-1, at 413. The Ohio Supreme Court affirmed in June 2001. *Bragg*, 748 N.E.2d at 534.

Meanwhile, in 1996, Bragg filed a motion for relief from judgment and a petition to vacate judgment and sentence. Doc. 6-1, at 35–46, 48–61, 498. The trial court denied the former motion in March 1996, *id.* at 47, and the court of appeals affirmed in September 1996, *State v. Bragg*, No. 70461, 1996 WL 502142, at *1 (Ohio Ct. App. Sept. 5, 1996). The trial court denied the latter petition in August 1996, Doc. 6-1, at 48–49.

In November 2000, Bragg filed a habeas petition with the Ohio Supreme Court. *See id.* at 507. That court sua sponte dismissed the petition the following month. *Id.* In March 2001, the United States Supreme Court denied Bragg's petition for a writ of certiorari. *Id.*

6

In 2001, Bragg filed an application for a nunc pro tunc order "to 'arrest the judgement.'" Doc. 6-1, at 63–76. The trial court denied this motion, *id.* at 82, and the court of appeals affirmed, *id.* at 122–24. The Ohio Supreme Court declined to hear Bragg's later appeal, finding that he failed to present "any substantial constitutional question." *Id.* at 128.

In December 2004, the trial court denied Bragg's application for DNA testing. Doc. 6-1, at 139. Two years later, Bragg filed with the trial court a motion for relief from judgment related to that court's 2004 order denying his application for DNA testing. Doc. 6-1, at 129–37. The trial court denied the motion for relief from judgment in December 2006. *Id.* at 152. The court of appeals affirmed in February 2008,[3] *id.* at 256–64, *State v. Bragg*, 2008-Ohio-683, 2008 WL 451858 (Ohio Ct. App. 2008), and denied a motion to reconsider in April 2008, Doc. 6-1, at 271.

Bragg quickly filed a notice of appeal with the Ohio Supreme Court. *Id.* at 272–73. That court dismissed Bragg's appeal. *Id.* at 305.

In 2019, Bragg filed a motion to correct facially illegal sentence. *Id.* at 306–14. The trial court denied the motion in May 2019. *Id.* at 315. On appeal, *see id.* at 316, the court of appeals reversed, *id.* at 351–63. It "modif[ied] the trial court's sentence and vacate[d] the life imprisonment with eligibility for parole after 30 years imposed on Count 1 in the nunc pro tunc entry." *Id.* at

---

[3] The court of appeals' decision was released in February but was not "journalized" until the following month. *See* Doc. 6-1, at 256.

7

361. The court remanded so that the trial court could impose a sentence consistent with the court of appeals' direction. *Id.* at 363. Following a motion for reconsideration, *id.* at 364–71, the court of appeals reached the same conclusion, *see id.* at 397–410.

The trial court issued a new judgment as to counts one and two in March 2020. *Id.* at 411. It merged counts one and two, sentenced Bragg to life imprisonment on count two with parole eligibility after 30 years, and imposed no sentence on count one. *Id.* It ordered that "[t]he 3[-]year firearm specification shall be served prior to and consecutive to the sentence of life with parole eligibility after 30 years on count 2." *Id.*

3. *Bragg's civil actions*

In May 1996, Bragg filed in this Court a civil rights action against state officials. *See* Doc. 1-17, at 1. As a Canadian citizen, he sought "declaratory and injunctive relief requiring his transfer [to Canada] under the Treaty Between the United States and Canda on the Execution of Penal Sentences, July, 1978, 30 U.S.T. 6263-6272, T.I.A.S. No. 9552."[4] *Id.* In July 1996, this Court dismissed Bragg's complaint as "legally frivolous." *Id.* at 1–2. In doing so, the Court remarked that Bragg's "sole federal remedy is … habeas corpus" and that his "underlying legal theory" was "doubtful." *Id.* at 2.

---

[4] The Treaty provides a mechanism in certain circumstances for the transfer of a prisoner imprisoned in a Canadian or American prison to a prison in the other country if the prisoner is a citizen of that other country.

8

In June 2005, "Bragg filed a complaint" in the Franklin County Court of Common Pleas "against the State, seeking declaratory and injunctive relief." *Bragg v. Taft*, 2007-Ohio-846, 2007 WL 611289, at *1 (Ohio Ct. App. 2007). Relevant to this complaint, Bragg had twice previously requested a transfer under the Treaty to a Canadian prison. *Id*. Ohio denied both requests under Ohio Revised Code § 5120.53, which limits transfer authority with respect to defendants convicted of murder. Bragg argued that Section 5120.53 was "overbroad and violate[d] the [Constitution's] Supremacy Clause … because it conflicts with the express terms of the Treaty." *Id*. The trial court eventually granted the State's motion to dismiss. *Id*.

On appeal to Ohio's Tenth District Court of Appeals, that court noted that Section 5120.23 "precludes offenders convicted of aggravated murder from being transferred to a prison in their native country pursuant to a treaty entered into between the United States and a foreign country."[5] *Id*. at *2. The

---

[5] The court of appeals quoted the then-current version of Section 5120.23:

> (A) If a treaty between the United States and a foreign country provides for the transfer or exchange, from one of the signatory countries to the other signatory country, of convicted offenders who are citizens or nationals of the other signatory country, the governor, subject to and in accordance with the terms of the treaty, may authorize the director of rehabilitation and correction to allow the transfer or exchange of convicted offenders and to take any action necessary to initiate participation in the treaty. If the governor grants the director the authority described in this division, the director may take the necessary action to initiate participation in the treaty and, subject to and in accordance with

9

court then held that, contrary to Bragg's argument, the Treaty does not provide a legal right to transfer. *Id.* at *3. The court held that:

> Bragg's argument … rests upon a fundamental misconstruction of the plain meaning of section 7 [of the Treaty]. That section merely identifies the types of offenders that are eligible for transfer; it does not mandate that an offender be transferred. Moreover, in making this argument, Bragg has selectively omitted the critical section of the Treaty, which deals a fatal blow to his argument. That section provides:
>
>> If the offender was sentenced by the courts pursuant to the laws of a state or province of one of the Parties, the approval of the authorities of that state or province, as well as division (B) of this section and the terms of the treaty, may allow the transfer or exchange to a foreign country that has signed the treaty of any convicted offender who is a citizen or national of that signatory country.
>>
>> (B)(1) No convicted offender who is serving a term of imprisonment in this state for aggravated murder, murder, or a felony of the first or second degree, who is serving a mandatory prison term imposed under section 2925.03 or 2925.11 of the Revised Code in circumstances in which the court was required to impose as the mandatory prison term the maximum prison term authorized for the degree of offense committed, who is serving a term of imprisonment in this state imposed for an offense committed prior to the effective date of this amendment that was an aggravated felony of the first or second degree or that was aggravated trafficking in violation of division (A)(9) or (10) of section 2925.03 of the Revised Code, or who has been sentenced to death in this state shall be transferred or exchanged to another country pursuant to a treaty of the type described in division (A) of this section.

10

> that of the federal authority, shall be required. The federal authority of the Receiving State shall be responsible for the custody of the transferred Offender.
>
> Section 5, Article III. By its terms and as construed by the courts, section 5 confers unfettered discretion upon the sentencing state to grant or deny an offender's request for transfer. *Walton v. Dept. of Corr.* (Mich.Ct.App. 1995), 212 Mich.App. 455. *See, also, In re Arenas* (N.J. 2006), 385 N.J.Super. 440; *Brancaccio v. Reno* (D.D.C. 1997), 964 F.Supp. 1, 7 ("The language of the Treaty regarding the transfer of prisoners is discretionary."); *Marshall v. Reno*[,] (D.D.C. 1996), 915 F.Supp. 426, 432 ("no language in the treaty's implementing legislation affords [an offender] with a right to a transfer."). Given that the Treaty does not provide an offender with a right to a transfer, we agree with the trial court that Bragg's complaint fails to state a claim upon which relief can be granted. As a result, no justiciable controversy exists.

*Id.*

*Federal habeas corpus petition*

On August 13, 2024, Bragg filed a federal habeas corpus petition under 28 U.S.C. § 2254.[6] Doc. 1. The Warden filed a return, Doc. 6, and Bragg filed a traverse, Doc. 9. The Warden did not file a reply to the traverse.

**Law and Analysis**

*1. Bragg's petition is governed by 28 U.S.C. § 2254*

Bragg asserts in his petition that he filed it under the All Writs Act, found at 28 U.S.C. §1651(a), and 28 U.S.C. § 2241. Doc. 1, at 1, 5. In his return,

---

[6] As is discussed below, Bragg's petition is necessarily filed under 28 U.S.C. § 2254.

11

the Warden cites 28 U.S.C. § 2244(d)(1) and argues that Bragg's petition is untimely. *See* Doc. 6, at 20. Bragg responds that the statute of limitations in Section 2244(d)(1) doesn't apply because he filed his petition under the All Writs Act and Section 2241. Doc. 9, at 2. As is discussed, Bragg is mistaken.

Start with the All Writs Act. It provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act notably "do[es] not create an independent basis for federal subject matter jurisdiction." *Jacobs v. Ohio*, No. 19-cv-0557, 2019 WL 3500939, at *1 (N.D. Ohio July 31, 2019) (citing *Heydon v. MediaOne of Southeast Michigan, Inc.*, 327 F.3d 466, 470 (6th Cir. 2003) and *Michigan v. City of Allen Park*, 954 F.2d 1201, 1216 (6th Cir. 1992)). Rather, as the All Writs Act provides, it "only authorizes the issuance of writs 'in aid of … jurisdiction.'" *Id.* (quoting 28 U.S.C. § 1651(a)). A "Court must [therefore] have an independent basis for subject matter jurisdiction … to issue a writ in aid of such jurisdiction." *Id.*

Further, if "a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). And while the "Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever

12

compliance with statutory procedures appears inconvenient or less appropriate." *Id*.

The short of the above is that a state prisoner can't simply point to the All Writs Act and ask a federal court to order his release. Instead, the prisoner must comply with 28 U.S.C. § 2254, which controls the Court's authority with respect to state prisoners. *See Felker v. Turpin*, 518 U.S. 651, 662 (1996); *Pennsylvania Bureau of Correction*, 474 U.S. at 43; *cf. Haggard v. State of Tenn.*, 421 F.2d 1384, 1386 (6th Cir. 1970) ("It is settled that a federal court has no general jurisdiction to issue writs of mandamus where that is the only relief sought. In the absence of special statutory authority it can issue writs of mandamus only as ancillary to and in aid of jurisdiction otherwise vested in it.").

Next up is Section 2241. Section 2241 and 2254 do "not provide … separate source[s] of habeas jurisdiction." *Rittenberry v. Morgan*, 468 F.3d 331, 337 (6th Cir. 2006). Instead, "section 2254(a) is a limitation on the general grant of jurisdiction conferred in section 2241 that applies to cases involving prisoners subject to state court judgments." *Id*. As a result, "all petitions seeking relief from state court convictions are … specifically filed 'under section 2254' … and are subject to its restrictions." *Id*. at 337; *see Felker*, 518 U.S. at 662. And, as is relevant to Bragg, petitions filed under section 2254, are subject to the statute of limitations found in 28 U.S.C. § 2244(d)(1). *See*

13

*Brown v. Haviland*, 23 F. App'x 244, 245 (6th Cir. 2001) ("a one-year statute of limitations is applicable to § 2254 petitions") (citing 28 U.S.C. § 2244(d)(1)).

### 2. Bragg's petition is untimely

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "the 1996 Act"), Pub. L. No. 104–132, 110 Stat. 1214, provides a one-year limitations period in a habeas action brought by a person in custody from a state court judgment. Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of—

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Under subparagraph (A), a judgment becomes final at the "conclusion of direct review or [on] the expiration of the time for seeking such review." The

14

trial court issued a new judgment on March 3, 2020.[7] *Id.* at 411. From there, Bragg would ordinarily have had 30 days, to file an appeal with the court of appeals. *See* Ohio App. R. 4(A)(1). But due to the COVID-19 pandemic, his filing deadline was tolled from March 9, 2020, until July 30, 2020. *See Roach v. Vapor Station Columbus, Inc.*, 2022-Ohio-2106, 2022 WL 2211529, at *2–3 (Ohio Ct. App. 2022). Because six days had elapsed from March 3 to March 9, 2020, Bragg had 24 days from July 30, 2020 when tolling ended—until August 23, 2020—to file his appeal. *See id.* at *2 (explaining how Ohio's tolling order operated). But Bragg did not file an appeal by that date. So the trial court's judgment became final the next day, August 24, 2020. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Under Section 2244(d)(1)(A), Bragg had one year from August 24, 2020, to file his habeas petition. But Bragg did not file his petition until August 2024, nearly three years too late. This means that unless Section 2244(d)(1)(B), (C), or (D) apply, the Court must dismiss Bragg's petition as untimely.

For his part, Bragg doesn't point to anything that might arguably implicate subparagraphs (B) or (C). That leaves subparagraph (D), which would only apply if the "factual predicate" for Bragg's "claim" was only

---

[7] The Warden argues that Bragg's conviction became final in 1992, when his time to seek review on direct appeal in the United States Supreme Court expired. Doc. 6, at 21. The Warden thus argues that Bragg had until one year after the effective date of the 1996 Act to file his habeas petition. *Id.* Because it makes no difference to its analysis, the Court assumes that the trial court's corrected judgment issued in 2020 started the clock anew.

15

discovered "through the exercise of due diligence" after the expiration of the limitations period. But Bragg has known about the basis for his argument under the Treaty since the 1990s. Subparagraph (D), therefore, does not save Bragg's petition.

Bragg, however, argues that the statute of limitations does not apply because he is being subject to a continuing violation of the Treaty which "renew[s] any applicable limitations period daily." Doc. 9, at 2. But Bragg points to no court that has recognized a continuing violation theory as a way to avoid the statute of limitations. *See McAleese v. Brennan*, 483 F.3d 206, 218 (3d Cir. 2007) (discussing the theory and noting that the petitioner did "not point to any case in which we have applied the continuing violations theory in the context of tolling the limitations period in habeas corpus cases in a way that would extend the habeas corpus petition timeliness requirements in contravention of Congress's emphasis on the finality of convictions in enacting the AEDPA."). And with good reason. This purported exception would swallow the statute whole. Further, even if this theory had some possible validity, Bragg hasn't pointed to any action since the 1990s by any state official denying his transfer request. *See McAleese*, 483 F.3d at 218 ("[t]o establish … a … continuing violations theory, a plaintiff must … demonstrate that at least one act occurred within the filing period") (citation omitted); *cf. McBroom v. Richard*, No. 17-3599, 2017 WL 6016384, at *2 (6th Cir. Nov. 8, 2017) (order) ("The record is clear, however, that the parole board did not issue a new

16

revocation decision each time but rather that it continued McBroom's prison term based on the original decision to revoke his parole.").

In his return, the Warden argues that Bragg is not entitled to equitable tolling. Doc. 6, at 26. The Warden is correct; habeas petitioners bear the burden of "persuading the court" that they are entitled to equitable tolling, *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002), and Bragg hasn't argued that equitable tolling could save his petition. So he's forfeited that argument.

Bragg's petition is untimely and should therefore be dismissed

### 3. *Alternatively, Bragg has procedurally defaulted his Treaty argument*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020). To exhaust his remedies, a state defendant must "fairly presen[t]" those claims to the state courts before raising them in a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). A claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003).

Bragg has never raised his Treaty argument before Ohio's Supreme Court. And Bragg offers no basis to conclude that there is a mechanism for him to raise his Treaty argument now in Ohio's courts, years after those courts

17

ruled on his direct appeal and his various other filings. Indeed, he is well past the time during which he could file a petition for postconviction relief. *See* Ohio Rev. Code § 2953.21(A)(2)(a). And given Ohio's res judicata rule, because Bragg could have raised the issue on direct review, he cannot raise it now before Ohio's courts. *See Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) ("Ohio has a rule that claims must be raised on direct appeal if possible; otherwise, res judicata bars their litigation in subsequent state proceedings."); *see State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233, 235 (Ohio 1996) (reaffirming the rule from *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967)). Bragg has therefore procedurally defaulted his Treaty argument. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

*4. Bragg's argument is meritless*

Even putting aside all of the above, Bragg's argument is meritless. Bragg asserts that the limitation in Ohio Revised Code § 5120.53 violates the Treaty. Doc. 1, at 4; Doc. 9, at 4–5. As general matter, however, a treaty "establish[es] rights and obligations between" the countries who are parties to the treaty and "not between states and individuals, notwithstanding the fact that individuals may benefit because of a treaty's existence." *United States v. Barinas*, 865 F.3d 99, 104-05 (2d Cir. 2010). As a result, courts presume that treaties "do not create rights that are privately enforceable in the federal courts … [a]bsent express language in a treaty providing for particular judicial remedies." *United States v. Emuegbunam*, 268 F.3d 377, 389–90 (6th Cir.

2001); *see also Lan Xuan Dang v. Ask-Carlson*, No. 13-cv-32, 2013 WL 3424175, at *3 (W.D. La. July 8, 2013) ("[W]ith respect to treaties, there is a presumption that treaties do not create privately enforceable rights in the absence of express language to the contrary, even when the treaty may benefit specific individuals") (citation omitted).

Here, Bragg points to nothing in the Treaty that might give rise to a right that he could enforce. And review of the Treaty reveals nothing to support such an argument.

Further, Bragg does not grapple with the language of the Treaty. Instead, he argues that Section 5120.53 violates the Treaty because it "removes all discretion from … Ohio and completely blocks the implementation of the terms of the Treaty." Doc. 9, at 4.

Bragg, however, doesn't point to anything in the Treaty that would bar Ohio from withdrawing discretion from state actors to transfer prisoners who have been convicted of murder. Indeed, he doesn't dispute that the Treaty gives "unfettered discretion to grant or deny an offender's request to transfer," Doc. 9, at 4, and doesn't explain why Ohio's legislature, as an arm of the state, could not exercise that "unfettered discretion" in the manner that it did. *See Toor v. Holder*, 717 F. Supp. 2d 100, 107 (D.D.C. 2010) ("the Convention never *requires* a state to transfer a prisoner, and in fact, the agreement only allows transfer when all three parties (the prisoner and both states) agree to it."). Indeed, "[e]very court" to consider a similar Treaty argument "has come to the same

19

conclusion: there is no individual right to a transfer under the Convention." *U.S. ex rel. Rickard v. Sternes*, 149 F. Supp. 2d 437, 452 (N.D. Ill. 2001) (citing cases), *aff'd sub nom. Rickard v. Sternes*, 44 F. App'x 738 (7th Cir. 2002).

So Bragg's argument fails on the merits.

**Conclusion**

Given the above, the Court should dismiss Bragg's Petition.

Dated: August 19, 2025

                                          */s/James E. Grimes Jr.*
                                          James E. Grimes Jr.
                                          U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).