**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **John T. Bragg,** | **Case No. 1:24-cv-01388-PAB** |
| **Petitioner,** | |
| -vs- | |
| | **JUDGE PAMELA A. BARKER** |
| **Warden Jerry Spatny,** | |
| **Respondent.** | **MEMORANDUM OPINION & ORDER** |

Currently pending before the Court is Petitioner John T. Bragg's ("Bragg") Objection (Doc. No. 12) to Magistrate Judge James E. Grimes, Jr.'s Report and Recommendation (Doc. No. 10).  For the following reasons, the Court overrules Bragg's Objection, the R&R is adopted in part, and the Court dismisses Bragg's Petition with prejudice.

## I.    Background

On August 13, 2024, Bragg filed his Petition.  (Doc. No. 1).  Therein, Bragg asserts the following:

> 5. Petitioner was convicted in the Cuyahoga County, Ohio Common Pleas Court, in Case No. CR237718 of two counts of Aggravated Murder with specifications, and one count each of Kidnapping and Aggravated Robbery, all with attendant firearm specifications and, on October 23, 1989, was sentenced to serve indefinite prison terms of 30-life with a merged 3-year term for all firearm specifications run consecutively therewith for the two Aggravated Murder charges, and 10-25 years on each of the other two charges for a total prison term of 53 years to life (Exhibit D, Sentencing Journal Entry);
>
> 6. The Treaty Between the United States and Canada on the Execution of Penal Sentences, (July 19, 1978, No. 12, 30 U.S. 6263-6272, T.I.A.S. No. 9552) provides for the transfer of prisoners between Canada and the United States for the prisoners to serve their sentences in their home countries, provided certain preconditions exist Exhibit E, Treaty);

7. The specific conditions required to be present to trigger the Treaty Provisions are: that the offense for which the offender was convicted and sentenced is one which would also be a crime in the Receiving State (Treaty, Exhibit E, Article II (§a)); that the offender is a citizen of the Receiving State (§b); that the offense is not an offense under immigration or military law (§C); that the offender has at least six months remaining n (sic) their sentence (§D); that the offender has no appeals or collateral attacks pending and the time in which to do so has expired (§E); and that the offender must be serving a sentence of life (id, Article III, (§a), or has a definite termination date to the sentence (§b), the offender is confined as a juvenile (§C) or the offender has been deemed a "dangerous or habitual offender" (§d);

8. The crimes of Aggravated Murder, Kidnapping and Aggravated Robbery are criminal offenses in Canada, the "Receiving State" (Exhibit F, Approval of Application for Transfer from Canada)[;]

9. Petitioner is a citizen of Canada; and has more than six months remaining on his sentence (Exhibit G, ODRC Sentence Statement), has no appeals or collateral attacks upon his conviction or sentence pending and the time in which to do so has long expired; and Petitioner is serving a sentence of life, Exhibits D and G);

10. All of the requirements for transfer under the ratified Treaty (Exhibit E) are present and fulfilled in this case (Exhibit H, Letter to then-Governor Taft from Canadian MP Paul De Villers, December 13, 1999);

11. In 1994, Petitioner filed an Application for Transfer to Canada under the Terms of the Treaty between Canada and the United States on the Execution of Penal Sentences, which was approved by the Corrections Services of Canada and by the United States Department of Justice, but was denied by ODRC Director Roger Overburg on the asserted basis of the lack of enabling legislation to comply with the terms of the Treaty (see Exhibit I letter informing Petitioner dated June 7, 1995);

12. In 1995, the 120th Ohio General Assembly passed Senate Bill 242 which contained, inter alia, enabling legislation to effect transfers or exchanges of certain convicted offenders to the Country in which they are citizens or nationals pursuant to a Treaty between that country and the United States, which was subsequently codified under Ohio Law at Ohio Revised Code §5120.53 (Exhibit J)[;]

13. On (03/17/1998), Petitioner filed another Application for Transfer to Canada under the Terms of the Treaty between Canada and the United States on the Execution of Penal Sentences (Exhibit A);

14. Petitioner's request was again denied based solely and completely upon certain provisions of Ohio Revised Code §5120.53 which purport to preclude anyone who is serving a term of imprisonment for any offense listed in the Treaty, being any

2

sentence of life, or any dangerous offense, ("aggravated murder, murder, or a felony of the first or second degree[")]) (id, §(B)(l ));

15. This provision of Ohio Revised Code §5120.53 is "exceptional, in that no other states have legislation which systematically precludes the transfer of a category of offenders who would normally qualify under the *Transfer of Offenders Treaty*" (Exhibit K, Letter from Andy Scott, Solicitor General of Canada, September 25, 1997);

16. The inclusion of this language in the statute which effectively removed all Ohio prisoners from eligibility for transfer to their native country, including Petitioner, was deliberate and had the Legislative intent to actually preclude Ohio's compliance with and/or participation in the Treaty-mandated transfer of eligible Ohio prisoners to Canada, it is, therefore, completely impossible to comply with the requirements of the International Treaty required for transfer and the State of Ohio's legislation; ( Exhibit M);

17. The underlying reasoning for including the language in the statute that excludes virtually all offenders from participation in Treaty Transfers, was financial, which has been specifically established, in writing, to the Legislator responsible for drafting the contents of Ohio S.B. 242, Karen Gilmore (Exhibits L, Letter to Karen Gilmore from then-ODRC Director Reginald Wilkinson, March 5, 1997, stating that the real cost of housing a prisoner in Ohio was $2,000 at the time, and that the Ohio prison system receives $1,200.00 per year from the Federal Government in Federal funding for each foreign national confined in Ohio prisons), and Exhibit N, Letter to Petitioner from Thomas J. Stickrath, Assistant Director of the ODRC, dated May 14, 1998, admitting that the refusal to transfer prisoners was due to cost);

18. The Ohio prison system applies for and receives annual Federal funding for housing Petitioner and other foreign nationals in Ohio prisons, under the State Criminal Alien Assistance Program (SCAAP), (8 U.S.C. § 1365); (See also Exhibit O, letter to Karen Gilmore from Al & Anne Fedrigucci, Founders of Alliance of Incarcerated Canadians in American Prisons (AICAP), November 18, 1998);

19. The Ohio Prison system further applies for and receives Federal funding for the claimed implementation of the transfer Treaties between, inter alia, the United States and Canada[;]

20. The Ohio prison system's repeated, continuing and ongoing applications for federal funding for implementation of the transfer Treaties between, inter alia, the United States and Canada constitutes a knowing, willful, wanton, purposeful and intentional violation of the Federal False Claims Act, 31 U.S.C. §3729(a)(l);

21. The legislation enacted by Ohio pursuant to Article III, §9 of the Treaty

3

Between the United States and Canada on the Execution of Penal Sentences, is not, in fact, enabling legislation as required by Treaty, but rather is in intent and effect, disabling legislation that stands in direct violation of the terms of the Treaty, duly ratified by Congress;

* * *

25. The requirement to invalidate any state laws that conflict with federal laws or duly ratified Treaties requires this Court to issue a Writ of Habeas Corpus compelling the State of Ohio to comply with the requirements of the Treaty Between the United States and Canada on the Execution of Penal Sentences, s (sic) Petitioner has been repeatedly accepted by Canada through multiple approvals of his repeated Applications under the Treaty, with the only obstacle to compliance with the Treaty Between the United States and Canada on the Execution of Penal Sentences, being the intransigence of the State of Ohio and the disabling legislation enacted thereby which, pursuant to well-settled United States Supreme Court case law, has no authority to supersede federal law or Federal Treaties.

(*Id.* at ¶¶ 5–21, 25.)

On December 9, 2024, Respondent filed his Return of Writ.  (Doc. No. 6.)  On January 16, 2025, Bragg filed his Traverse.  (Doc. No. 9.)  Then, on August 19, 2025, the Magistrate Judge issued the Report and Recommendation.  (Doc. No. 10.)  Therein, the Magistrate Judge recommends that the Court dismiss Bragg's Petition for three reasons: (1) Bragg's petition is governed under 28 U.S.C. § 2254 and is untimely under the AEDPA, (2) Bragg has procedurally defaulted his Treaty argument, and (3) Bragg's Petition fails on the merits.  (*Id.* at PageID #638–647.)  With respect to the final reason, the Magistrate Judge found:

Even putting aside all of the above, Bragg's argument is meritless. Bragg asserts that the limitation in Ohio Revised Code § 5120.53 violates the Treaty. Doc. 1, at 4; Doc. 9, at 4–5. As [a] general matter, however, a treaty "establish[es] rights and obligations between" the countries who are parties to the treaty and "not between states and individuals, notwithstanding the fact that individuals may benefit because of a treaty's existence." *United States v. Barinas*, 865 F.3d 99, 104-05 (2d Cir. 2010). As a result, courts presume that treaties "do not create rights that are privately enforceable in the federal courts … [a]bsent express language in a treaty providing for particular judicial remedies." *United States v. Emuegbunam*, 268 F.3d 377, 389–90 (6th Cir. 2001); *see also Lan Xuan Dang v. Ask-Carlson*, No. 13-cv-

4

32, 2013 WL 3424175, at *3 (W.D. La. July 8, 2013) ("[W]ith respect to treaties, there is a presumption that treaties do not create privately enforceable rights in the absence of express language to the contrary, even when the treaty may benefit specific individuals") (citation omitted).

Here, Bragg points to nothing in the Treaty that might give rise to a right that he could enforce. And review of the Treaty reveals nothing to support such an argument.

Further, Bragg does not grapple with the language of the Treaty. Instead, he argues that Section 5120.53 violates the Treaty because it "removes all discretion from … Ohio and completely blocks the implementation of the terms of the Treaty." Doc. 9, at 4.

Bragg, however, doesn't point to anything in the Treaty that would bar Ohio from withdrawing discretion from state actors to transfer prisoners who have been convicted of murder. Indeed, he doesn't dispute that the Treaty gives "unfettered discretion to grant or deny an offender's request to transfer," Doc. 9, at 4, and doesn't explain why Ohio's legislature, as an arm of the state, could not exercise that "unfettered discretion" in the manner that it did. *See Toor v. Holder*, 717 F. Supp. 2d 100, 107 (D.D.C. 2010) ("the Convention never requires a state to transfer a prisoner, and in fact, the agreement only allows transfer when all three parties (the prisoner and both states) agree to it."). Indeed, "[e]very court" to consider a similar Treaty argument "has come to the same conclusion: there is no individual right to a transfer under the Convention." *U.S. ex rel. Rickard v. Sternes*, 149 F. Supp. 2d 437, 452 (N.D. Ill. 2001) (citing cases), *aff'd sub nom. Rickard v. Sternes*, 44 F. App'x 738 (7th Cir. 2002).

So Bragg's argument fails on the merits.

(*Id.* at PageID #645–47.)

On September 5, 2025, Petitioner filed his Objection to the Report and Recommendation. (Doc. No. 12.) Therein, Petitioner asserts four objections:

1.     "The Magistrate erred as a matter of law in erroneously stating that the Petition was filed 'under 28 U.S.C. §2254', and placing AEDPA restrictions on it."  (*Id.* at PageID #652.)

2.     "The Magistrate erred as a matter of law in erroneously stating that the Petition was untimely."  (*Id.* at PageID #654.)

5

3.      "The Magistrate erred as a matter of law in erroneously stating that the Petition was procedurally defaulted."  (*Id.* at PageID #655.)

4.      "The Magistrate erred as a matter of law by arguing that the Respondent can enact legislation that constitutes a blanket ban on compliance with the Treaty, and, thus, the Petition is meritless."  (*Id.* at PageID #657.)

Respondent did not file a Response to Bragg's Objection.  Accordingly, Bragg's Objection is ripe for review.

## II.      Standard of Review

When a petitioner objects to a magistrate judge's resolution of a dispositive matter, the district court reviews those objections *de novo*.  Fed. R. Civ. P. 72(b)(3).  Specifically, a district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. 28 U.S.C. § 636.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.  *Id.*  "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'"  *Jones v. Moore*, No. 3:04CV7584, 2006 U.S. Dist. LEXIS 97510, at *7 (N.D. Ohio April 7, 2006) (quoting *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981)).

## III.      Analysis

### A.      The Court overrules Bragg's fourth objection

The Court first addresses Bragg's fourth objection.  Bragg asserts that "[t]he Magistrate erred as a matter of law by arguing that the Respondent can enact legislation that constitutes a blanket ban on compliance with the treaty, and, thus, the petition is meritless."  (Doc. No. 12, PageID #657.)  In

6

support of his objection, Bragg argues:

> While acknowledging that what Ohio did rather than enact enabling legislation to facilitate the execution of the Treaty, was to instead enacted disabling legislation to block the execution thereof, despite taking federal funding under the guise of having enacted such enabling legislation, the Magistrate argues that, the Treaty "confers unfettered discretion upon the sentencing state to grant or deny an offender's request for transfer" there is no inherent right to be transferred, thus arguing that the claim must fail on its' (sic) merits.
>
> The problem with this argument is that it is fatally flawed. The fact that the Treaty provides "unfettered discretion to grant or deny an offender's request to transfer" is not germane to this argument for the simple reason that the disabling legislation enacted by Ohio's Legislature, for which the State also sought and received federal funding, does not present any opportunity for the exercise of any discretion by the sentencing state to execute the terms of the Treaty. Rather, and herein lies the Constitutional error, the disabling legislation removes all discretion from the sentencing state in Ohio and completely **blocks** the implementation of the terms of the Treaty with no regard for any of the provisions thereof. A simple review of Ohio Revised Code §5120.53 establishes that there is absolutely no provision for the exercise of any discretion, but rather, simply contains language that completely contradicts the eligibility requirements of the Treaty to render **any** Ohio prisoner who qualifies for transfer thereunder, ineligible for transfer under the purportedly "enabling" legislation. It is the fact that the statute, as written, completely precludes any ability to execute the Treaty that interferes with the Constitutional rights of Petitioner John T. Bragg as well as all other Ohio prisoners adversely affected thereby.
>
> The blocking of Bragg from the elements of the Treaty was not the result of the exercise of the unfettered discretion of the sentencing state, but rather results solely and completely from the fact that the so-called enabling legislation mandated under the Treaty is anything but.
>
> The State of Ohio has swindled the federal government out of federal funding by falsely claiming to have enacted enabling legislation to facilitate execution of the Treaty, where in fact, the opposite is true. Petitioner has been adversely affected by this. Notably, if the State of Ohio enacted new legislation tomorrow that did, in fact, vest discretion in the sentencing state and, in the exercise of that discretion, decide, based upon an analysis of the relevant factors, not to permit Bragg to transfer, (as is the case in all of the cited cases relating to Treaty compliance cited by both the respondent and the Magistrate) there would be no argument, and no case, on Bragg's behalf. Under the current state of Ohio law, there is no provision for the exercise of the mandated discretion due to the fact that the State of Ohio's legislation is not, in fact, enabling, but is disabling, and in direct violation of the

7

terms of the duly adopted and enacted Treaty. The Magistrate's argument that the claim lacks merit is incorrect, and Petitioner hereby specifically objects thereto.

(Doc. No. 12, PageID #657–59 (emphasis in original).)

Bragg's argument can be boiled down to a simple point: the Treaty Between the United States of American and Canada on the Execution of Penal Sentences, July 19, 1978, 30 U.S.T. 6263–6272, T.I.A.S. No. 9552 (the "Treaty") prohibited Ohio from enacting O.R.C. § 5120.53.  Bragg, however, is incorrect.

"The Supremacy Clause provides that 'all Treaties made . . . under the Authority of the United States, shall be the supreme Law of the Land.'"  *Loza v. Mitchell*, 766 F.3d 466, 499 (6th Cir. 2014) (quoting U.S. Const. art. VI cl. 2).  Pursuant to the Supremacy Clause, "treaties override any conflicting state or local law."  *Grand Traverse Band of Ottawa & Chippaewa Indians v. Director, Mich. Dep't of Natural Resources*, 141 F.3d 635, 641 (6th Cir. 1998).  To determine whether a treaty preempts state law, the Court's analysis "must begin . . . with the text of the treaty and the context in which [its] written words are used."  *Doe v. Etihad Airways, P.J.S.C.*, 870 F.3d 406, 412 (6th Cir. 2017) (quoting *Air France v. Saks*, 470 U.S. 392, 397 (1985)).

Contrary to Bragg's argument, there is nothing in the Treaty that would prohibit Ohio from enacting so-called "disabling" legislation as Bragg contends.  Bragg's argument appears to be premised upon Article III, Section 9 of the Treaty.  That Section provides that that "[e]ach Party shall establish by legislation or regulation the procedures necessary and appropriate to give legal effect within its territory to sentences pronounced by courts of the other Party and each Party agrees to cooperate in the procedures established by the other Party."  Treaty, Art. III, sec. 9.  But the State of Ohio is not a "party" to the Treaty required to enact legislation "to give legal effect" to the Treaty. The Treaty is between the United States and Canada.  *Hogan v. Koenig*, 920 F.2d 6, 8 (9th Cir. 1990)

8

("California is neither a party to the Treaty nor the authority of a party to the Treaty").  Put simply, there is nothing in the Treaty mandating that the State of Ohio enact so-called "enabling" legislation.[1]

Further, Bragg's argument that O.R.C. § 5120.53 "contradicts the eligibility requirements of the Treaty" is belied by the text of the Treaty.  The Treaty provides "[i]f the Offender was sentenced by the courts pursuant to the laws of a state or province of one of the Parties, *the approval of the authorities of that state* or province, as well as that of the federal authority, *shall be required*."  Treaty, Art. III, sec. 5.  The State of Ohio (e.g. "the authorities of that state") has determined that offenders like Bragg will never be approved for a transfer.  Under O.R.C. § 5120.53(B)(1):

> *No convicted offender who is serving a term of imprisonment in this state for aggravated murder, murder, or a felony of the first or second degree*, who is serving a mandatory prison term imposed under section 2925.03 or 2925.11 of the Revised Code in circumstances in which the court was required to impose as the mandatory prison term the maximum definite prison term or longest minimum prison term authorized for the degree of offense committed, who is serving a term of imprisonment in this state imposed for an offense committed prior to July 1, 1996, that was an aggravated felony of the first or second degree or that was aggravated trafficking in violation of division (A)(9) or (10) of section 2925.03 of the Revised Code, or who has been sentenced to death in this state *shall be transferred or exchanged to another country pursuant to a treaty of the type described in division (A) of this section*.[2]

(Emphasis added).  There is nothing in the Treaty prohibiting a state from enacting legislation that categorically withholds approval to transfer certain offenders.  Because the State of Ohio's approval is mandatory before a transfer can happen under the Treaty, the Ohio General Assembly was well within its discretion to enact a statute that categorically prohibits the transfer of offenders like Bragg.

---

[1] The United States itself has enacted so-called "enabling" legislation pursuant to the Treaty.  *See Sluss v. United States DOJ*, 898 F.3d 1242, 1246 (6th Cir. 2018); 18 U.S.C. § 4110, *et seq*.

[2] Division A provides, in relevant part, that "if a treaty between the United States and a foreign country provides for the transfer or exchange, from one of the signatory countries to the other signatory country, of convicted offenders who are citizens or nationals of the other signatory country, the governor, subject to and in accordance with the terms of the treaty, may authorize the director of rehabilitation and correction to allow the transfer or exchange of convicted offenders and to take any action necessary to initiate participation in the treaty."

The Court does not stand alone in its interpretation of the Treaty.  Nearly two decades ago, the Ohio Court of Appeals (in one of Bragg's many prior cases) reached the same conclusion as the Court does today.  Rejecting Bragg's argument that the Treaty preempts O.R.C. § 5120.53, the Ohio Court Appeals held that "[b]y its terms and as construed by the courts, section 5 [of the Treaty] confers unfettered discretion upon the sentencing state to grant or deny an offender's request for transfer."  *Bragg v. Taft*, No. 06AP-741, 2007 Ohio App. LEXIS 730, at *9 (Ohio App. 10th Dist. Mar. 1, 2007).  Other courts have reached similar conclusions.  *Hogan*, 920 F.2d at 8 ("California has decided to cause Hogan to serve his sentence where he committed his crime, and not in his native land. California has the power to make such a decision, and the Treaty expresses no limitations on the basis on which California may make that decision"); *Walton v. Dept's of Corr.*, 538 N.W.2d 66, 67–68 (Mich. Ct. App. 1995) (rejecting the plaintiff's argument that "defendant's policy of categorically denying transfers to prisoners who fail to qualify under DOC policy OP-BCF-34.03 violates the treaty"); *cf. Toor v. Holder*, 717 F. Supp. 2d 100, 107 (D.D.C. 2010 ("When a treaty and statute set out no particularized standards or criteria on which to judge a transfer request, the agency reviewing the application has a completely unfettered discretion") (internal quotations omitted).

Bragg has not pointed the Court to any conflicting authority.  Based on the plain language of the Treaty, and in the absence of any conflicting authority, the Court finds that O.R.C. § 5120.53 is not preempted by the Treaty.  The Magistrate Judge therefore correctly rejected Bragg's argument that O.R.C. § 5120.53 violates the Treaty.  (Doc. No. 10, PageID #645–46.)  For this reason, the Court overrules Bragg's fourth objection.[3]

---

[3] Bragg's fourth objection fails for a separate, independent, reason.  As the Magistrate Judge correctly observed, treaties "do not create rights that are privately enforceable in federal courts . . . [a]bsent express language in a treaty providing for particular judicial remedies." (Doc. No. 10, PageID #645 (quoting *United States v. Emugbunam*, 268 F.3d 377, 389–90 (6th Cir. 2001).)  The Court agrees with the Magistrate Judge's conclusion that "the Treaty reveals nothing" that would

10

Ohio's General Assembly may decide one day that offenders like Bragg should be permitted to serve their sentences in Canada.  But as a matter of federal constitutional law, the State of Ohio was permitted to enact O.R.C. § 5120.53.  It is not this Court's job to determine whether enacting O.R.C. § 5120.53 was a decision made within the spirit of the Treaty, or if it was even a good idea.[4] *Doe v. Snyder*, 932 F. Supp. 2d 803, 813 (E.D. Mich. 2013) ("In our constitutional structure, where both separation of powers and federalism are paramount principles of the structuring of government, it is not for a federal court to tell a state legislature whether a particular law is effective or not").  If Bragg is unhappy with O.R.C. § 5120.53, his complaint lies with the Ohio General Assembly, and not with a federal court.  For all these reasons, the Court overrules Bragg's fourth objection.

**B.      Because Bragg's Petition fails on the merits, the Magistrate Judge's procedural findings are moot**

Bragg's remaining objections are premised upon the Magistrate Judge's procedural findings that (1) the Petition was filed under 28 U.S.C. § 2254, (2) the Petition was untimely, and (3) the Petitioner was procedurally defaulted.  (Doc. No. 12, PageID #652–57.)  Even assuming for the sake of argument that the Magistrate Judge's procedural findings were erroneous (which the Court offers no opinion on today), as explained above, Bragg's Petition fails on the merits.  Accordingly, Bragg's remaining objections are denied as moot.  *Hanna v. Ishee*, 694 F.3d 596, 610 (6th Cir. 2012) (declining to decide purported procedural defects to a habeas petition and denying the claim on the merits); *Simmons v. Brewer*, No. 18-11040, 2022 U.S. Dist. LEXIS 207998, at *5 (E.D. Mich. Nov.

---

create a private right of action.  (*Id.* at PageID #646.)  And there is generally no constitutional right to transfer between prisons.  *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Bagguley v. Bush*, 953 F.2d 660, 662 (D.C. Cir. 1991); *U.S. ex. Rel. Rickard v. Sternes*, 149 F. Supp. 2d 437, 452 (N.D. Ill. 2001).  Thus, Bragg's Petition also fails because the Treaty is not privately enforceable in federal court.

[4] And the Court offers no opinion on either point.

11

16, 2022) ("when the Court sua sponte dismissed Plaintiff's claims against these Defendants on the merits, this rendered moot Magistrate Judge Altman's R&R recommending dismissal on a procedural basis").

## IV.     Conclusion

For the reasons set forth herein, the Court overrules Bragg's Objection (Doc. No. 12), the R&R (Doc. No. 10) is adopted in part, and the Court dismisses Bragg's Petition (Doc. No. 1) with prejudice.  Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**


                                                         _s/Pamela A. Barker_____
                                                         PAMELA A. BARKER
Date:  March 31, 2026                                    U. S. DISTRICT JUDGE

12